United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

   Plaintiff and Respondent,

            v.

CONNIE C. ARMSTRONG,

   Defendant and Movant.
_____/

No. CR 94-0276 PJH

**ORDER RE: MOOTNESS; REQUIRING ADDITIONAL BRIEFING**

Before the court is petitioner Connie Armstrong's motion to vacate his sentence under 28 U.S.C. § 2255. Given the complicated history of this motion, the court sets forth the relevant background prior to its discussion regarding the additional briefing required in this case.

## BACKGROUND

On February 26, 1997, after a nearly three-month jury trial, Armstrong was convicted by a jury on each count of a twenty-one count indictment charging him with three counts of inducing others to travel in interstate commerce as a part of a scheme to defraud in violation of 18 U.S.C. § 2314 (counts 1-3), fourteen counts of wire fraud in violation of 18 U.S.C. § 1343 (counts 4-14 and 19-21), and four counts of interstate transportation of securities traceable to fraudulently obtained funds in violation of 18 U.S.C. § 2314 (counts 15-18). The charges related to the operation of Hamilton Taft & Company, Inc. ("Hamilton

Taft"), a payroll tax service company headquartered in San Francisco, California.

On August 29, 1997, Judge Legge sentenced Armstrong to 108 months in custody, three years supervised release, a fine, and restitution in the amount of $62,750,000.

Armstrong appealed to the Ninth Circuit. *See* Case No. 97-10392. He argued that: (1) the district court erred by not providing his proposed theory-of-the-defense instruction; (2) that the evidence at trial was insufficient to prove the scheme and intent to defraud with respect to all 21 counts; (3) that the government failed to prove that the funds transported into interstate commerce were traceable to funds taken by fraud with respect to counts 15-18; (4) that the district court erred in refusing to admit a declaration from an accountant who advised Armstrong on various business matters; and (5) that the district court erred by communicating ex parte with the jury during deliberations.

On April 19, 2000, the Ninth Circuit affirmed in part and reversed in part. It denied relief on all of the above claims except for the third one. The Ninth Circuit reversed Armstrong's conviction on the interstate transportation of securities charges (counts 15-18), concluding that the government failed to present sufficient evidence to establish beyond a reasonable doubt that the transported checks were derived from fraudulently obtained funds. It, however, affirmed his conviction on the other eighteen counts, and remanded to the district court for resentencing.

On August 15, 2000, Judge Legge resentenced Armstrong to 108 months in prison on the eighteen counts for which his conviction had been affirmed. Armstrong appealed, contending that the district court miscalculated the amount of loss upon which it based a seventeen-level upward adjustment, and also that the trial court violated *Apprendi v. New Jersey* by failing to submit the loss amount to the jury. 530 U.S. 466, 490 (2000). On April 15, 2002, the Ninth Circuit affirmed. *See* Case No. 00-10399.

Armstrong subsequently filed a petition for rehearing on May 29, 2002, which the court denied January 31, 2003. Mandate issued February 10, 2003.

More than four years later, on June 7, 2007, Armstrong's counsel, Bill Boyd, sent the Ninth Circuit a letter advising the court that Armstrong had not received any notice from the

court as to whether it had ruled on an April 26, 2002 motion for enlargement of time to file his petition for rehearing and/or whether it had ruled on his May 29, 2002 petition for rehearing. The Ninth Circuit subsequently sent Boyd a copy of the January 31, 2002 order denying Armstrong's petition for rehearing.

On August 2, 2007, Boyd again sent a letter to the Ninth Circuit asserting that Armstrong was not provided with the order previously or the notice required pursuant to Federal Rule of Appellate Procedure 36. As a result of the lack of notice, Armstrong had not timely filed a petition for writ of certiorari with the United States Supreme Court, nor had he filed a petition for relief under 28 U.S.C. § 2255.

On April 22, 2008, the Ninth Circuit construed the letter as a motion to recall the mandate, which it granted. It recalled the mandate and withdrew the January 31, 2003 order. The court then denied the petition for rehearing, and mandate issued that same day, April 22, 2008.

On May 11, 2009, Armstrong filed a motion to vacate, set aside or correct his sentence under 28 U.S.C. § 2255. At the time he filed his motion to vacate, Armstrong was on supervised release, serving the sentence imposed by Judge Legge.[1]

In a May 21, 2009 order to show cause, the court noted that Armstrong's § 2255 petition, although filed by counsel, was "not entirely comprehensible." It appeared to the court that Armstrong raised two claims: (1) that his due process and fair trial rights were violated by alleged prosecutorial misconduct caused by undue political influence; and (2) that his due process and fair trial rights were violated by the trial court's failure to properly instruct the jury. However, in its July 24, 2009 opposition, the government noted that Armstrong's petition actually appeared to raise three issues: (1) that his due process rights were violated because the government prosecuted him only because it was unduly pressured to do so; (2) that the government failed to disclose certain audiotapes; and (3) that the trial court erred by denying a defense request for a theory of the case jury

---

[1] This case was reassigned to the undersigned judge on June 29, 2001.

3

instruction that certain assets were not held in trust for Armstrong's clients but instead were assets of Armstrong's company that were available for his investment and use.

On August 14, 2009, Armstrong filed a motion for discovery, which the government opposed. However, on September 10, 2009, the court stayed the case and suspended any deadlines until October 26, 2009, so that Armstrong could find new counsel following the death of his attorney. At the time the court stayed the case, Armstrong's reply to his discovery motion was due September 18, 2009. Additionally, the court had also ordered that Armstrong's reply to his § 2255 petition would be due thirty days after the court ruled on his motion for discovery. Those deadlines were stayed by the order.

Subsequently, on October 26, 2009, Armstrong filed a number of documents including a notice of appearance pro se and a pro se reply in support of his motion for discovery. The latter filing completed the briefing on the motion for discovery.

Thereafter, in a January 8, 2010 order, the court noted that based on its review of the briefs filed to date, it appeared that Armstrong's § 2255 motion was untimely. The government had briefed the issue in its July 24, 2009 opposition, but noted that it needed additional documents in order to fully address the timeliness issue. *See* Oppos. at 7 & n. 3. The court stated that it preferred to resolve the timeliness issue prior to reaching the merits and/or Armstrong's discovery requests, and ordered the parties to file supplemental briefs addressing the timeliness of the petition.

In subsequent briefing, however, the government conceded that Armstrong's motion was timely based on the Ninth Circuit's April 22, 2008 order recalling its prior mandate, and its subsequent reissuance of a mandate that day.

In an April 28, 2010 order, based on the supplemental briefs and the court's review of the Ninth Circuit's docket and order, the court agreed that the petition was timely. In that same order, the court denied Armstrong's motion for discovery, noting that two of his claims, those claims on which he sought discovery, appeared to have been procedurally

defaulted because Armstrong had not raised those claims on direct appeal.[2] Accordingly, because the claims appeared to be procedurally defaulted, the court concluded that Armstrong was unable to demonstrate good cause entitling him to discovery under Rule 6(a) of the Rules Governing Section 2255 Proceedings.

The court noted that there was only one claim that had not been procedurally defaulted, Armstrong's claim that the trial court erred by denying a defense request for a theory of the case jury instruction that certain assets were not held in trust for Armstrong's clients but instead were assets of Armstrong's company that were available for his investment and use. The court noted that this issue had been raised before and rejected by the Ninth Circuit on appeal.

The court ordered Armstrong to file his reply to his § 2255 motion by May 28, 2010. Armstrong thereafter filed his reply on June 1, 2010.[3]

Subsequently, Armstrong successfully completed his term of supervised release on January 2, 2011. On June 30, 2011, the court inquired whether Armstrong's release had mooted his § 2255 petition. By written order, the court noted that "[g]iven the fact that Armstrong filed the § 2255 motion while he was still on supervised release and 'in custody,' his subsequent completion of supervised release" clearly did "not deprive the court of jurisdiction." *See Tyars v. Finner*, 709 F.2d 1274, 1279 (9th Cir. 1983). Nevertheless, the court asked the parties to consider whether completion of his sentence mooted the relief sought by Armstrong.

Both Armstrong and the government responded. Armstrong contends that his § 2255 petition is not moot because he continues to suffer collateral consequences from the conviction. He suggests that these consequences include the deprivation of the right to

---

[2] Those included Armstrong's claims: (1) that his due process rights were violated because the government prosecuted him only because it was unduly pressured to do so; and (2) that the government failed to disclose certain audiotapes.

[3] Armstrong contends that the documents were actually received by the court via Federal Express on the morning of May 28, 2010, in spite of the fact that they were not e-filed until June 1, 2010. The court need not resolve any dispute over the precise filing date, though, because it has reviewed and considered the reply.

5

vote, hold office, serve on a jury, the fact that his conviction could be used to impeach testimony he gave in future proceedings, and the possibility that his conviction could impact future criminal proceedings and result in the possibility of harsher punishment in conjunction with other convictions.

The government agrees that the "presumption" of such collateral consequences, combined with the fact that Armstrong's § 2255 motion challenges his conviction as well as his sentence, means that his claim is not mooted by the fact that his sentence is now complete. Accordingly, the court will not dismiss Armstrong's petition as moot.

**DISCUSSION**

There appear to be two additional preliminary issues that must be addressed before the court may reach the merits of Armstrong's § 2255 motion. Additionally, having reviewed the parties' briefs and the exhibits submitted by Armstrong in support of his claims, the court notes that are numerous evidentiary problems and issues with the exhibits, which prevent the court from utilizing the exhibits both in evaluating the remaining preliminary issues and with respect to the merits. Moreover, the court finds both parties' briefing of the issues inadequate. As noted in previous orders, Armstrong's opening brief is unclear. Furthermore, Armstong appears to have expanded on his arguments regarding the preliminary issues and the merits of his claims in his reply brief, and the court finds that the government is entitled to respond to the additional arguments and discussion contained therein.

Given the additional preliminary issues, the lack of clarity, and the evidentiary problems associated with the current briefing on the remaining preliminary issues and the merits, the court concludes that the most appropriate procedure is to provide the parties with an opportunity to address clearly and succinctly the remaining issues in accordance with the instructions that follow below. Additionally, Armstrong is required to re-submit any exhibits in support of his arguments and claims such that they comply with the local rules and Federal Rules of Evidence, also discussed in detail below.

As noted previously, Armstrong raises three claims in his § 2255 motion: (1) that his

6

due process rights were violated because the government prosecuted him only because it was unduly pressured to do so; (2) that the government failed to disclose certain audiotapes; and (3) that the trial court erred by denying a defense request for a theory of the case jury instruction that certain assets were not held in trust for Armstrong's clients but instead were assets of Armstrong's company that were available for his investment and use.

As noted in the court's April 28, 2010 order denying Armstrong's motion for discovery, the first two claims were not raised on direct appeal, and appear to have been procedurally defaulted. In his June 1, 2010 reply brief on the merits, Armstrong argues that he is able to demonstrate cause and prejudice for their procedural default. *Bousley v. United States*, 523 U.S. 614 (1998).

As for Armstrong's third claim, the one that is not procedurally defaulted because it was raised on appeal, there is nevertheless an additional bar to this court's review of that claim, which the government briefly mentioned in its opposition, but that Armstrong has failed to adequately address. The general rule is that absent exceptional circumstances, claims presented and rejected on direct appeal may not be litigated again in a § 2255 motion. *See United States v. Scrivner*, 189 F.3d 825, 828 (9th Cir. 1999) (appellate court decision rejecting claim was binding on court considering § 2255 motion).

Given all of these issues, the court concludes that additional briefing regarding both the procedural default and bar issues, and the merits, is necessary. The briefing should comply with the instructions that follow.

**1.     Exhibits/Evidentiary Submissions:**

Armstrong has submitted over forty exhibits in support of his petition, many of which appear to be documents he received in response to a Freedom of Information Act ("FOIA") request. The first twenty-six exhibits were attached to his May 11, 2009 motion to vacate his sentence. Although Armstrong submitted a list of the exhibits and tabbed the set of exhibits he provided the court, he did not submit a declaration or request for judicial notice, and the exhibits as submitted violate the local rules and Federal Rules of Evidence.

Criminal Local Rule 47-2(b), requires that motions "presenting issues of fact . . . be supported by affidavits or declarations which comply with the requirements of Civil L.R. 7-5." Civil Local Rule 7-5, in turn, requires that "[f]actual contentions made in support of or in opposition to any motion must be supported by an affidavit or declaration and by appropriate references to the record." Moreover, other evidence in support of or in opposition to any motion "must be appropriately authenticated by an affidavit or declaration." That rule further requires that affidavits and declarations contain factual contentions only, avoiding conclusions and legal argument, and "conform as much as possible to the requirements of FRCivP 56(e)."

To the extent that Armstrong intends to rely on any of these twenty-six exhibits in conjunction with the remaining procedural issues and/or the merits of his claims, he is required to bring the exhibits into conformity with the local rules and the Federal Rules of Evidence by filing a declaration and/or request for judicial notice that provides adequate authentication and foundation for the exhibits.

Armstrong also submitted seventeen exhibits in support of his reply brief. It is unclear to the court whether all of those exhibits are duplicative of the original twenty-six exhibits - or whether there are additional exhibits. Although Armstrong submitted a declaration in support of his reply, the declaration does not adequately authenticate or provide the requisite foundation for the seventeen exhibits as required by the Federal Rules of Evidence. Additionally, Armstrong failed to tab any of those seventeen exhibits as provided to the court.

Again, to the extent that Armstrong intends to rely on any of these seventeen exhibits in conjunction with the remaining procedural issues and/or the merits of his claims, he is required to bring the exhibits in conformity with the local rules and the Federal Rules of Evidence by filing a sufficient declaration and/or request for judicial notice that provides adequate authentication and foundation for the exhibits. Additionally, Armstrong is ORDERED to provide the court with a courtesy copy that includes tabs to the seventeen exhibits. The court is not required to search through a stack of paper that comprises

seventeen different exhibits, which have not been tabbed or indexed.

Additionally, in his future briefs, in all instances in which Armstrong is relying on a particular exhibit for factual contentions in support of his arguments and/or claims, he is required to cite to the pertinent exhibit(s) and to direct the court to the relevant portion of that exhibit, by specifying the page and line numbers.

### 2.   Further Briefing

#### a.   Brief Format

Armstrong and the government are required to brief and/or re-brief the remaining procedural issues and the merits of Armstrong's claims. With respect to *each* of the three claims, Armstrong should: (1) succinctly set forth his claim; (2) set forth his procedural arguments regarding why he should be permitted to bring the claim before this court and/or why the court should consider the claim on the merits; and (3) after addressing the procedural issue, set forth his arguments regarding the merits of the claim.

As for Armstrong's first two claims, he will need to demonstrate sufficient cause and prejudice allowing this court to reach them in spite of his procedural default. *See Bousley*, 523 U.S. at 621 (prisoner who failed to challenge validity of guilty plea on appeal procedurally defaulted claim); *United States v. Skurdal*, 341 F.3d 921, 925 (9th Cir. 2003) (prisoner who failed to bring claims of error on direct appeal procedurally defaulted them); *United States v. Mejia-Mesa,* 153 F.3d 925, 928 (9th Cir. 1998) (same); *see also United States v. Schlesinger*, 49 F.3d 483, 485 (9th Cir. 1995) (non-constitutional sentencing errors that were not raised on direct appeal considered waived and may not be reviewed by way of § 2255 motion).

As for the third claim, which was raised before the Ninth Circuit on direct appeal, Armstrong must show that there are exceptional circumstances permitting the court to review the claim since the general rule is that claims presented and rejected on direct appeal may not be litigated again in a § 2255 motion. *See Scrivner*, 189 F.3d at 828; *Davis v. United States*, 417 U.S. 333, 342 (1974).

The government's opposition should follow an identical format, setting forth each of

the issues, followed by its arguments regarding the procedural default and/or bar issue, and then its arguments regarding the merits of each claim.

### b. Deadlines

Armstrong's opening brief, declarations, exhibits, and any documents in support of his claims and arguments are due **no later than Friday, August 19, 2011.** The government's opposition is due **no later than Friday, September 16, 2011.** Armstrong's reply is due **no later than Friday, September 30, 2011.**

The court will subsequently rule on the procedural default and/or bar issues, and in the event Armstrong is able to demonstrate sufficient cause and prejudice on the first two issues, and exceptional circumstances as to the third issue, the court will rule as well on the merits of the three claims.

**IT IS SO ORDERED.**

Dated: July 22, 2011

_____
PHYLLIS J. HAMILTON
United States District Judge